perty. But it muft be fo conftrued, as to effect the intention of the legiflature, and produce the leaft mifchief. It is fufficient, if we can eftablifh, that the plaintiff was, at the time mentioned by the law, and yet is, the flave of *Reasin Pumfrey*, and the fame perfon regiftered by the name *Ruth*. The defcription of *Ruth*, as to age, fex, and colour correfponds with the fex, colour, and age at that time of *Lucy*.

PRESIDENT. The queftion may be of confiderable importance, and deferve further difcuffion ; I hope, therefore, the party againft whom our opinion is will put it in a way of being examined on a writ of Error. And I am glad, for this reafon, that our opinion happens to be againft the party beft able to do this.

We do not admit the teftimony. It would reduce that certainty of a regiftry, intended by the law, to a ftate of abfolute uncertainty. An error in the chriftian name is effential, unlefs corrected by another defcription annexed, as wife, bifhop, earl, &c. Fraud and perjury would be let in, to defeat the purpofes of the law, and make flaves of *Negroes* really free. The fault lies with the mafter; and he muft bear the confequences.

*Simonfon* tendered a bill of exceptions.

There was a verdict for the plaintiff.

---

# ALLEGHENY COUNTY,

## March Term, 1799.

### PENNSYLVANIA *v.* JAMES STOOPS.

*S*TOOPS was indicted for the murder of *Catharine*, his wife.

Her death was occafioned by burning. Her back, thighs, and legs were feverely burnt. She furvived it about three weeks.

Her depofition taken in writing by a magiftrate, about five days after the burning, and figned by him, was offered in evidence.

*J. Campbell* for the prifoner, objected to this tefti-
mony,—1. If the wife had been alive, fhe could not
have been admitted for or againft her hufband. This
is a general principle : they are but one perfon in law.
Lord *Audley's* cafe is the ground on which all exceptions
to this rule have been founded ; and it is now fettled,
that this cafe is not law. If fhe could not have been a
witnefs, while alive, her depofition cannot be read after
her death. For, if a witnefs be incompetent, when the
depofition is taken, competency when it is offered in
evidence will not make it admiffible. It is true, that,
after the death of the wife, one reafon for this rule, the
maintenance of domeftic peace, and mutual confidence,
no longer exifts : but the rule is general, and controls
all other confiderations.

2. This depofition is not figned by the deponent : it
is, therefore, imperfect and inadmiffible.

*Galbraith,* for the ftate. The neceffity of the cafe
often requires the admiffion of interefted witneffes, as in
larceny, &c. Perfonal force and fecrecy are reafons for
admitting the teftimony of the wife againft the hufband.
The depofition of a witnefs, afterwards dying or unable
to attend, may be read. A wife is a witnefs againft her
hufband in an indictment for an affault and battery.

PRESIDENT. I have been generally impreffed with
an opinion, that, in cafes of fecret perfonal injury, a wife
may, on her own teftimony, obtain protection againft
her hufband, and be a witnefs, to procure his punifh-
ment. She may obtain furety of the peace from him,
on her own oath. The only or chief ground, on which
this has been doubted, the maintenance of conjugal
peace, exifts not after the death of the wife.

The objection, that the depofition is not figned feems
to reft on cafes of examinations under certain acts of
parliament, or of unfinifhed examinations. But if the
declarations of the dying perfon had not been written,
nor fworn to, would they not have been admiffible ?

In the cafe of the *King v. Reafon* and *Franter*, the
dying declarations of Mr. *Luttrel*, though not on oath,
were given in evidence by a witnefs who heard them.
And it was held, that a paper, on which his declarations
on oath were written by the fame witnefs, who was not
a magiftrate, though not figned by Mr. *Luttrel*, or by

the magiftrate who adminiftered the oath, would have been better evidence, than the memory of the witnefs. In *Woodcock's* cafe, the dying declarations of a wife murdered by her hufband, taken on oath, and reduced to writing by a magiftrate, and figned by him, with her mark made on the paper in approbation of its contents, were admitted in evidence on an indictment of murder againft the hufband; and, on this teftimony, he was convicted and executed. This cafe was tried before judges of great learning and talents. Nor does it feem abfolutely neceffary, for the competency of fuch evidence, that fuch declarations fhould be made under an immediate apprehenfion of death, though that be one great ground of their competence and credit.

*Leach's Ca.* 437.

*Radburne's cafe,*
*Leach* 399.
*Woodcock's cafe, Leach* 437.

We will admit the teftimony: but the point may be referved.

The magiftrate who took the depofition proved, that it was drawn up in the words of the deceafed. It ftated, that on a frivilous offence, after fcolding her, *Stoops* threw her on the fire, that fhe efcaped from him, and got out of doors, that he purfued her, dragged her in again, threw her again on the fire, and held her on the fire, and burnt her fo as fhe then was.

*Galbraith* then offered to read a confeffion of *James Stoops*, written on the fame paper, by the fame juftice.

*J. Campbell* objected, that this confeffion was not figned.

President. I confider this objection as arifing out of the particular provifions of the Englifh ftatutes.— We will admit the teftimony: you may have the point referved if you pleafe.

*Gilb. L. of Ev.* 137-9.

The confeffion was proved by the magiftrate, and amounted to this:—That fhe was abufing him, and he had thrown her on the fire; that fhe got up, and run out of the houfe, and, when fhe came in again, her cloaths were on fire. He denied that he dragged her back into the houfe; and he gave no anfwer, when afked whether he had thrown her into the fire a fecond time.

In all her converfations after the burning, fhe declared, that her hufband threw her into the fire, and charged him with her death. He refufed to let a phyfician be called to her:—One was called. He was examined as a witnefs; and faid, that, in fome places, the fkin and mufcles were burnt away; in fome places, her

1799.

flefh was like roafted meat, and, in fome places, there were ulcers; that it appeared impoffible that fhe fhould furvive; and that the burning caufed her death.

It was proved, that both hufband and wife were addicted to drunkennefs, were often drunk, and quarrelled and fought with each other; that fhe was often the aggreffor; that they were both drunk in the morning of the day on which the burning happened, that they were left alone in the houfe in that condition, before the burning, and found fo, and in very ill humour with each other, after it.

The prifoner's counfel urged, that the throwing on the fire might be accidental, or in felf-defence; and the burning be from incapacity in her to rife, or him to raife her; and that the killing was but homicide *per infortunium*, or, at moft, manflaughter.

*Galbraith*, for the ftate, admitting that it was not murder in the firft degree, earneftly contended that it was murder in the fecond degree.

The jury found him guilty of voluntary manflaughter; and he was fentenced to imprifonment and hard labour for five years.

---

### GILES, a Negro Man, *v.* JOSHUA MEEKS.

ON a writ *de homine replegiando*, a certificate of the regiftration of the plaintiff as a flave, on 19th *December*, 1782, was produced, under feal, from the clerk of the feffions of *Wafhington* county.

*Brackenridge*, for the plaintiff, offered evidence, that *Hull*, the mafter who then owned him, had confeffed, that *Giles* was not regiftered, till after *January*, 1783. The act of 13th *April*, 1782, requires a regiftration before *January*, 1783.

*2 St. L. 55.*

*Semple*, for the defendant. Proof of this kind would deftroy the record: and this cannot be done by parole proof.

*Brackenridge.* This act has been conftrued liberally in favour of the mafter; and, confidering the act of regiftering as a minifterial act, though informal, it has